SUE FAHAMI
Executive Assistant
District of Nevada
Nevada Bar No. 5634
ADAM FLAKE
Appellate Division Chief and
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Adam.Flake@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00240-GMN-BNW |
| Plaintiff, | **GOVERNMENT'S MOTION FOR STAY PENDING APPEAL** |
| vs. | |
| DEVONTE DEVON JACKSON, | |
| Defendant. | |

**Certification: This motion is timely.**

On September 30, 2025, Judge David Campbell, sitting by designation in the District of Nevada, granted in part and denied in part Defendant Devonte Jackson's motion to dismiss. ECF No. 42. Specifically, the Court held: (1) Sigal Chattah is not validly serving as Acting U.S. Attorney for the District of Nevada, pursuant to the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345 *et seq.*; (2) Ms. Chattah cannot participate in Jackson's prosecution pursuant to the Attorney General's delegation of prosecutorial and supervisory authority to Ms. Chattah in her capacity as Special Attorney and First Assistant U.S. Attorney for the District of Nevada; and (3) dismissal of the indictment and disqualification of the AUSAs prosecuting Jackson's case is not warranted. *Id*.

1

The government asks this Court to stay the order disqualifying Ms. Chattah from participating in Jackson's prosecution pending the resolution of any appellate proceedings[1] related to that order.[2] Such a stay would be consistent with the disposition of *United States v. Giraud*, 1:24-cr-768 (D.N.J.)—the only other district court decision to date involving these issues—in which the court stayed a similar disqualification order pending appeal. *See id.*, ECF No. 145. The government respectfully submits that the same result is appropriate here.

Courts consider four factors in deciding whether to grant a request for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (citation omitted); *see, e.g.*, *American Fed. of Gov't Employees, AFL-CIO v. Trump*, 148 F.4th 648, 654 (9th Cir. 2025) (same).

---

[1] Pursuant to 28 C.F.R. § 0.20(b), the Solicitor General has authorized an appeal of this Court's decision.

[2] The order is appealable under the collateral order doctrine, which permits appeal of a small class of interlocutory orders under § 1291 before a final judgment on the merits. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such orders must (1) conclusively determine the disputed question, (2) resolve an important issue that is completely separate from the merits of the dispute, and (3) be effectively unreviewable on appeal from a final judgment. *See United States v. Whittaker*, 268 F.3d 185, 191 (3d Cir. 2001).

In *United States v. Williams*, 68 F.4th 564 (9th Cir. 2023), the Ninth Circuit held that the disqualification of a U.S. Attorney's Office from litigating misconduct motions satisfied the collateral order doctrine. *Id.* at 570. Likewise, in *Whittaker*, the Third Circuit held that an order disqualifying a U.S. Attorney from participating in a prosecution is an immediately appealable collateral order. 268 F.3d at 191–93. Many other courts have reached a similar conclusion. *See United States v. Vlahos*, 33 F.3d 758, 761 (7th Cir. 1994); *In re Grand Jury Subpoena of Rochon*, 873 F.2d 170, 173 (7th Cir. 1989); *United States v. Caggiano*, 660 F.2d 184, 189-90 (6th Cir. 1981)); *United States v. Bolden*, 353 F.3d 870, 874–78 (10th Cir. 2003); *United States v. Under Seal*, 757 F.2d 600, 602 & n.1 (4th Cir. 1985). Accordingly, the government can appeal the order disqualifying Ms. Chattah.

The first two factors—likelihood of success and irreparable injury—are "the most critical" and "fall on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quotation marks omitted); *see Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). The Ninth Circuit has recognized that to justify a stay, a moving party must show, at a minimum, that it has "substantial case on the merits" or that "serious legal questions are raised." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011).

The government stands by its position that (1) Ms. Chattah is validly serving as Acting U.S. Attorney under the FVRA, and (2) is authorized to supervise cases handled by the U.S. Attorney's Office pursuant to an express delegation of such authority by the Attorney General in any event. *See* ECF No. 36. The government respectfully disagree with the Court's decision to the contrary and submits that the government has a strong likelihood of success on appeal. At the very least, this case presents "serious legal questions" about the separation of powers, the scope of the FVRA, and the Attorney General's authority to delegate her authority to supervise criminal prosecutions on behalf of the United States.

As explained more fully in the government's opposition to Jackson's motion to dismiss, ECF No. 36, the plain text of 5 U.S.C. § 3345(a)(1) demonstrates that Ms. Chattah is validly serving as the Acting U.S. Attorney. The statute provides that "[i]f" an Executive Branch officer subject to Presidential appointment and Senate confirmation ("PAS") "dies, resigns, or *is* otherwise unable to perform" the functions of the office, then the first assistant "shall perform" those functions in an acting capacity. 5 U.S.C. § 3345(a)(1) (emphasis added). Ms. Chattah's appointment complies with the plain meaning of that provision: no PAS United States Attorney existed at the time Ms. Chattah was designated as First Assistant, nor has one existed at any time since, and thus Ms. Chattah "shall perform" the duties of the office of

United States Attorney on an acting basis (subject to statutory time limits) for as long as a PAS officer "is otherwise unable to perform" those functions. The FVRA does not limit acting service to only the individual (if any) who happened to be serving as the first assistant to the officer when the vacancy initially arose. Although the Court disagreed with those arguments, they present (at minimum) serious legal questions for appeal. Indeed, as explained more fully in the government's opposition, ECF No. 36 at 7–9, the Court's decision is at odds with the longstanding interpretation of the FVRA adopted by both the Government Accountability Office and the Office of Legal Counsel, and with decades of practice across the Executive Branch. Limiting subsection (a)(1) to require the first assistant to be an incumbent in order to serve as an acting PAS officer renders (a)(1) effectively unavailable during presidential transitions, when it is often most needed, as frequently both the PAS office and first assistant position are vacated before the transition. And as explained in the government's opposition, ECF No. 36 at 9–10, there are at least two significant circumstances where the President cannot rely on subsection (a)(1) to select an acting officer and thus subsections (a)(2) and (a)(3) play an important role. When the first assistant position is itself a PAS office, (a)(1) is unavailable because the Executive Branch cannot appoint a first assistant without Senate confirmation, and the President must use (a)(2) or (a)(3) instead. Subsections (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer. Even if such circumstances were infrequent, that does not render the function of subsections (a)(2) and (a)(3) superfluous.

Moreover, as further explained in the government's opposition, ECF No. 36 at 13–16, the Attorney General has delegated to Ms. Chattah the authority to supervise Jackson's prosecution under 28 U.S.C. §§ 509, 510, and 515. The Court's decision rejecting that argument is at least in tension with the Attorney General's broad statutory authority to delegate her

powers—including powers otherwise exercised by U.S. Attorneys—to special attorneys and others acting on her behalf, and with decisions of the Ninth Circuit and other courts who have held that the FVRA does not invalidate the exercise of delegable duties. *See, e.g.*, *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022) (holding that the FVRA does not preclude a non-acting officer from exercising lawfully delegated duties of a vacant PAS office); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024) (holding that the FVRA's remedial provisions do not prohibit ratification of an agency official's performance of lawfully delegated duties of a vacant PAS office). The government agrees that Section 3347 of the FVRA is the exclusive means of designating an *acting official* who can perform *all* of the duties of the office—both delegable and nondelegable. But a person does not need to be an acting official at all to perform the delegable duties of the office, since the Attorney General can, as she did here, delegate those duties to a *non*-acting official. Indeed, as the Court's decision recognized, Assistant U.S. Attorneys—which include senior attorneys who supervise line prosecutors—can continue to work on this prosecution pursuant to their authority delegated from the Attorney General. *See* ECF No. 42 at 27, 31-32. Ms. Chattah can likewise validly supervise Assistant U.S. Attorneys pursuant to delegated authority in her capacity as First Assistant U.S. Attorney and Special Attorney. The government has thus demonstrated, at a minimum, that this case raises serious legal questions, satisfying the first prong.

      Second, the government will be seriously and irreparably harmed without a stay. Disqualifying the Acting U.S. Attorney for the District of Nevada has profound implications for the enforcement of federal law throughout that district. Absent a stay, the order will remove the Executive's choice to lead a critical Executive Branch component and will require senior leadership of the Department of Justice to oversee almost every function of the U.S. Attorney's

5

Office, including in this and other criminal cases. The improper judicial disruption of the executive chain of command is a serious and irreparable injury. As the Ninth Circuit recognized in *Williams*, "the effect of any attorney disqualification order is fairly irreversible because it materially changes" the party's position, and if the case is allowed to proceed under such circumstances, no remedy will be available. 68 F.4th at 570 (quotations and brackets omitted); *see id.* ("After a final judgment, it will be too late for our court to undo any improper encroachment on the Executive branch's prosecutorial prerogatives.").

Third, granting a stay will not cause Jackson substantial injury. Ms. Chattah has been Acting U.S. Attorney during the entire pendency of Jackson's case. A stay will merely preserve the status quo. *See Mi Familia Vota*, 111 F.4th at 984 ("A judicial stay is ordinarily a mechanism to preserve, not upset, the status quo pending appeal."). And Jackson does not—and cannot—identify any aspect of his prosecution that would likely be affected if Ms. Chattah remains at her post during the pendency of an appeal.

Fourth, the public interest favors a stay. In *Williams*, the Ninth Circuit explained that that "special solicitude" is "owed to Executive branch prerogatives under the separation of powers." 68 F.4th at 570. "Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government" and "the power to appoint subordinate officers to assist [her] in the discharge of [her] duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). Recognizing that "the conduct of federal criminal litigation … is an executive function within the exclusive prerogative of the Attorney General," the Ninth Circuit has observed that "[t]he separation of powers mandates judicial respect for the prosecutor's independence" and emphasized the importance of preserving the Executive Branch's control over criminal prosecutions. *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356,

1366 (9th Cir. 1987) (quotations and brackets omitted). The public interest in ensuring this principle is foundational.

## CONCLUSION

Based upon the above, this Court should grant a stay of the disqualification order pending appeal.

DATED: October 3, 2025

          SUE FAHAMI
          Executive Assistant

          */s/ Adam Flake*
          _____
          ADAM FLAKE
          Appellate Division Chief and
          Assistant United States Attorney